GROSS, J.
John Aery timely appeals a final summary judgment entered in favor of Wallace Lineoln-Mercury, LLC d/b/a Maroone Lincoln Mercury of Lake Park, the defendant below, based upon three grounds: (1) that Aery lacked standing to pursue his claim under Florida’s Whistleblower Act since he filed for Chapter 18 bankruptcy while his suit was pending; (2) that Aery was judicially estopped from claiming lost wages since he successfully demonstrated total disability to recover social security disability benefits; and (3) that Aery was otherwise barred from recovering lost wages since he failed to mitigate his damages. We reverse, holding that (1) as a Chapter 13 debtor, Aery retained the power to bring suit on behalf of his estate; (2) judicial estoppel does not preclude recovery of lost wages because Aery raised the factual issue that the retaliatory firing was the cause of his disability; and (3) in the light most favorable to Aery, issues of fact remain as to whether he failed to mitigate his damages.

Factual Background

We state the facts in the light most favorable to Aery, the non-moving party who lost the summary judgment below. See Winn-Dixie Stores, Inc. v. Dolgencorp, Inc., 964 So.2d 261, 262-63 (Fla. 4th DCA 2007).
Beginning on March 11, 2003, Aery worked as the automobile parts manager for Maroone. Aery soon took issue with the conduct of the body shop manager, who had both the access and authority to submit orders for parts. Aery alleged that the body shop manager was engaging in purportedly illegal acts. Specifically, Aery claimed that when a customer would bring an automobile to the body shop for repair, the body shop manager would order new parts from a parts vendor, while also purchasing corresponding, and far cheaper, used parts from a separate dealer. The body shop manager would then install the used part in the customer’s car and return the new part to the original vendor for credit. Thereafter, he would send an invoice to the insurance company to receive reimbursement for the amount of the new part.
Aery informed his general manager of the part-switching scheme in May 2003. Later that month, he and the general manager had a sit-down meeting to discuss the issue, during which Aery informed him that such practice “was not only against industry standards” but “against the law.” The general manager assured Aery that he would straighten everything out. However, as the months went by, no action was taken.
For the next several months, Aery continued to report the dishonest practices to *908 the general manager, with no results. Eventually, in September 2003, the general manager met with the body shop manager. After the meeting, the body shop manager made a scene and angrily peeled out of the company’s parking lot in his car. However, despite this outburst, the practices continued.
With the issue still lingering, Aery, in late 2003, reported the matter directly to Maroone’s corporate headquarters. In response, headquarters attempted to set up a meeting with Aery and his general manager, but the meeting never took place. Aery tried again to bring the issue to headquarters’ attention in January 2004, but he was ignored. Eventually, on March 1, 2004, with the part-switching practices continuing, the general manager fired Aery, citing a necessary “reduction in the workforce.” No one else was fired, although several others resigned shortly thereafter.
After his firing, Aery began to suffer bouts of depression. Nevertheless, he entered the job market and eventually found a job as a sales associate at a Ford dealership in May 2004; however, he resigned from that position just three days after starting since “they didn’t have it set up properly” and he “couldn’t make money the way they had it set up.” Thereafter, in October 2004, Aery landed another job in Leesburg, Florida. By May 2005, he was once again terminated for reasons Aery deemed to be unfair. At age 62, Aery found that, given the unjust nature of his last two firings, he was “unable mentally to continue to look for work.” He eventually applied for, and received, Social Security Disability Benefits.

Procedural Posture

In April 2006, Aery brought suit against Maroone in the circuit court. In July 2007, Aery filed his third amended complaint, in which he alleged one violation of section 448.101-105, Florida Statutes (2005), also known as Florida’s Whistle-blower Act. As grounds for his complaint, Aery alleged that Maroone fired him for reporting the practices of the body shop manager, which implicated the following statutes:
a. Section 817.413 F.S. — Sale of Used Motor Vehicle Goods as New, a third degree felony;
b. Section 817.29 F.S. — Cheat, also a third degree felony;
c. Section 812.017 — Use of a fraudulently obtained or false receipt, a [misdemeanor] of the second degree; and,
d. Section 812.014 — Theft, a felony of varying degrees.
As his prayer for relief, Aery tracked the language of Section 448.103(2), and requested, among other things, “[c]ompensation for lost wages, benefits, and other remuneration; and ... [s]uch other and further relief as allowed at law.”

Bankruptcy Proceedings

In December 2007, while the circuit court suit was pending, Aery filed for Chapter 13 bankruptcy. Four months later, the bankruptcy court confirmed Aery’s Chapter 13 Plan, which included a Schedule “B” form listing the “[e]mployment lawsuit against AutoNation”[1] as a “contingent and unliquidated claim[]” valued at approximately $249,000.00.
Upon learning of the bankruptcy proceedings, the trial court, on November 6, 2009, conducted a status conference to determine whether Aery’s act of filing for bankruptcy divested himself of standing to pursue his wrongful firing claim. After reviewing each party’s memorandum, the trial court entered an order finding that *909 Aery was authorized to bring suit on behalf of the bankruptcy estate since a “plaintiff who files for bankruptcy under Chapter 13 maintains standing to pursue pre-petition litigation claims.”

Summary Judgment

Following the completion of discovery, on January 5, 2012, Maroone moved for summary judgment, stating four grounds: (1) that “Aery [wa]s judicially estopped from pursing his damage claim for lost wages by virtue of his contradictory assertions made to the Social Security Administration that he is disabled and unable to work”; (2) that Aery “failed to mitigate his damages” since he had retired and was not seeking “substantially equivalent employment”; (3) that Aery lacked standing to bring his suit “since the claims are property of his bankruptcy estate”; and (4) that Aery failed to state a cause of action since the statutory violations he had listed in his complaint were materially different than the violations asserted in his original complaint. To support its argument as to Aery’s entitlement to damages, Maroone relied upon Aery’s response to a question during interrogatories, in which he indicated that he “fe[lt] that if he got his job back he would be able to work at Autonation.”
In a responsive memorandum, Aery claimed, based upon the trial court’s previous decision, that he maintained standing to pursue his suit individually since he had filed for bankruptcy under Chapter 13, as opposed to Chapter 7. Concerning his claim for damages, Aery said that he was entitled to lost wages and other compensatory damages since he had acted with due diligence to attain equal employment, but such efforts were stunted by the total disability brought about by his firing. To support the notion that his unlawful firing was the cause of his disability, Aery relied in part on the following snippets from his deposition testimony:
Q. Okay. And is it your position that you’ve been totally disabled and unable to work since May 2005?
A. Yes.
Q. And why do you believe you’ve been unable to work since May of 2005?
A. Well, I suffer from PTSD from an injury in the military and I’ve worked through it all my years without it affecting my ability to work or perform at all. But after what happened to me in the last two jobs, it increased my — they call it stress, you know, level and depression. So that’s what that caused. And after that, I — I just had a hard time — it would be hard for me to try to go in and try to get a job. I — I’m just not mentally there. And — and, of course, I — I—for the last almost two years now, I’ve been laid up with three major surgeries on my stomach, so that — that’s chilled me for the last two years from doing anything.
[[Image here]]
Q. And it was only after you were terminated from [Maroone] that you became unable to work?
A. Yeah, I just — I chose not to work anymore. I just didn’t have it in me anymore.

Trial Court’s Order

Following a hearing, the trial court entered an order granting summary judgment in favor of Maroone upon several grounds. First, relying upon the doctrines of judicial estoppel and failure to mitigate damages, the court ruled that Aery was precluded from recovering the lost wages that had accrued since May 26, 2005, because, on that date, Aery had “successfully asserted before the Social Security Administration that he has been unable to work,” and he had otherwise retired and not sought further employment. In addition, the trial court found that Aery lacked *910 standing to bring his suit altogether since his “wrongful discharge claim [wa]s property of the bankruptcy estate,” subject to the exclusive control of the bankruptcy trustee.
With the trial court’s finding on the standing issue effectively bringing litigation to a close, Aery moved for rehearing and clarification, again making reference to the trial court’s earlier ruling that he had standing to bring suit as a Chapter 13 debtor. The trial court denied Aery’s motion and entered a final judgment.

Standard of Review

“A circuit court’s order granting summary judgment is reviewed de novo.” Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co., 105 So.3d 602, 606 (Fla. 4th DCA 2013) (citing Sunshine State Ins. Co. v. Jones, 77 So.3d 254, 257 (Fla. 4th DCA 2012)). “In reviewing a summary judgment, [the court] must consider all record evidence in a light most favorable to the non-moving party. If material facts are at issue and the slightest doubt exists, summary judgment must be reversed.” Mills v. State Farm Mut. Auto. Ins. Co., 27 So.3d 95, 96 (Fla. 1st DCA 2009). “ ‘To obtain a final summary judgment, the moving party must conclusively demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to a judgment as a matter of law.’ ” Flanigan’s Enters., Inc. v. Shoppes at 18th & Commercial, Inc., 954 So.2d 758, 764 n. 4 (Fla. 4th DCA 2007) (quoting Maldonado v. Publix Supermarkets, 939 So.2d 290 (Fla. 4th DCA 2006)).

Standing for Bankruptcy Debtors

As a Chapter 13 debtor, Aery had standing to bring this case in the circuit court.
“The issue of standing is a threshold inquiry which must be made at the outset of the case before addressing whether the case is properly maintainable.... ” Ferreiro v. Philadelphia Indem. Ins. Co., 928 So.2d 374, 376 (Fla. 3d DCA 2006) (citing Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997)). To satisfy the standing requirement, “the plaintiff must show that a case or controversy exists between the plaintiff and the defendant.” United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006) (citing Godwin v. State, 593 So.2d 211 (Fla.1992); Montgomery v. Dept. of Health Rehabilitative Servs., 468 So.2d 1014 (Fla. 1st DCA 1985)). “In its broadest sense, standing is no more than having, or representing one who has, a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.” Elston/Leetsdale, LLC v. CWCapital Asset Mgmt. LLC, 87 So.3d 14, 16 (Fla. 4th DCA 2012) (quoting Kumar Corp. v. Nopal Lines, Ltd., 462 So.2d 1178, 1182 (Fla. 3d DCA 1985)) (internal quotations omitted).
When an individual files for bankruptcy, the “[clauses of action which belong to the debtor, including employment discrimination claims,” become part of the estate property. Richardson v. United Parcel Serv., 195 B.R. 737, 739 (E.D.Mo.1996); see also McGuire v. United States, 550 F.3d 903, 914 (9th Cir.2008) (“A chose in action is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).”) (citing City & Cnty. of San Francisco v. PG & E Corp., 433 F.3d 1115, 1126 (9th Cir.2006)); Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir.2006) (“[T]he estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims.... ”). As a result, where a plaintiff files for bankruptcy while a suit is pending, issues of standing inevitably will arise, since, in certain instances, suits claimed by the estate “may only be pursued by the bankruptcy Trustee,” as representative of the bankruptcy estate. *911 Canterbury v. Federal-Mogul Ignition Co., 483 F.Supp.2d 820, 825 (S.D.Iowa 2007); Nat’l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir.1999).
Whether a bankruptcy debtor may pursue a lawsuit in another court depends on the chapter under which the debtor filed bankruptcy. In this regard, “Chapter 7 and Chapter 13 provide two distinct methods for an individual to cure ... indebtedness.” Wilson v. Dollar Gen. Corp., 717 F.3d 337, 2013 WL 2130939, at *5 (4th Cir.2013). “Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor’s property, to which end Congress granted the trustee broad powers without interference from the debtor.” Cable v. Ivy Tech State Coll., 200 F.3d 467, 472 (7th Cir.1999). In such circumstances, “[t]he trustee has sole authority to dispose of property, including managing litigation related to the estate.” Id.
Chapter 13, on the other hand, has been characterized as a “hybrid” of Chapter 7’s liquidation process and Chapter ll’s reorganization plan for business debtors. In re Griner, 240 B.R. 432, 436 (Bankr.S.D.Ala.1999). Chapter 13 bankruptcy differs from Chapter 7 in that it is
available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors’ nonexempt assets or monitor ordinary course usage of assets. The trustee does not receive any of the debtors’ earnings except what is paid to him or her as prescribed by the chapter 13 plan.

Id.

These differences between the degree of control given to a debtor under Chapter 7 and Chapter 13 are crucial because “an essential feature of a chapter 13 case is that the debtor retains possession of and may use all the property of his estate, including his prepetition causes of action.” Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1209 n. 2 (3d Cir.1991). In other words, unlike a Chapter 7 bankruptcy, “ ‘[t]he reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given broad latitude essential to control the progress of their case.’ ” Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 515 (2d Cir.1998) (quoting In re Freeman, 72 B.R. 850, 854 (Bankr.E.D.Va.1987)); see also Cable, 200 F.3d at 472 (“[T]he Chapter 13 debtor has been considered analogous to Chapter 11, ... which grants the debtor full authority as representative of the estate typical of a trustee.”) (citation omitted); Smith v. Rockett, 522 F.3d 1080, 1082 n. 2 (10th Cir.2008).
Since the Chapter 13 debtor therefore “steps into the role of trustee and exercises concurrent authority to sue ... on behalf of the estate,” Cable, 200 F.3d at 473, the majority position among the federal circuit courts appears to be that Chapter 13 debtors, unlike their Chapter 7 counterparts, “are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case.” Maritime Elec. Co., 959 F.2d at 1209 n. 2; see, e.g., Crosby v. Monroe Cnty., 394 F.3d 1328, 1331 n. 2 (11th Cir.2004) (“[BJecause Crosby filed under Chapter 13 of the Bankruptcy Code, he retains standing to pursue legal claims on behalf of the estate.”); Smith, 522 F.3d at 1082 (“We therefore hold that Plaintiff, *912 as a Chapter 13 debtor, had standing to file this complaint on behalf of the bankruptcy estate.”); Cable, 200 F.3d at 472-73; Olick, 145 F.3d at 515. Finding otherwise “would frustrate the essential purpose of’ Chapter 13 by “granting] the debtor possession of the chose in action yet prohibiting] him from pursuing it for the benefit [of] the estate.” Cable, 200 F.3d at 473; see also Looney v. Hyundai Motor Mfg. Ala., LLC, 330 F.Supp.2d 1289, 1292-99 (M.D.Ala.2004) (providing detailed justification as to why Chapter 13 debtors retain standing to maintain pre-petition suits).
The trial court’s ruling that Aery lacked standing was based on two decisions that relied on Chapter 7 cases to conclude that a debtor did not have standing to pursue a pre-petition lawsuit. In Smith v. Cumulus Broadcasting, LLC, C.A., No. 4:09-cv-02885-JMC, 2011 WL 3489820, at *3 (D.S.C. Aug.8, 2011), the district court determined that it was bound by precedent which established that all bankruptcy debtors lack standing to pursue pre-petition claims. However, upon reconsideration less than a year later, the district court withdrew its previous order and clarified that it had erroneously relied upon Chapter 7 cases to resolve a Chapter 13 matter. Smith v. Cumulus Broad., LLC, No. 4:09—cv-02885-JMC, 2012 WL 1067749, at *3 (D.S.C. Mar.29, 2012).
Likewise, in Hadden v. State Farm Fire & Casualty Co., 37 So.3d 918, 919 (Fla. 5th DCA 2010), the plaintiff “filed a pro se petition for federal bankruptcy protection,” although the court did not specify the chapter. Thereafter, in finding that the plaintiff lacked standing to bring suit, the Fifth District relied upon Chapter 7 cases for the contention that the plaintiffs act of filing for bankruptcy made his lawsuit part of the “property of the bankruptcy estate subject to the trustee’s exclusive control.” Id. at 920. Thus, although not specified in the opinion, the holding of Hadden is distinguishable in that it is applicable only to Chapter 7 proceedings.
“The failure of a party to disclose a cause of action as an asset in a prior bankruptcy proceeding, which the party knew or should have known existed at the time of that proceeding, deprives him or her of ‘the legal capacity to sue subsequently on that cause of action.’ ” Potruch & Daab, LLC v. Abraham, 97 A.D.3d 646, 949 N.Y.S.2d 396, 397 (N.Y.App.Div.2012) (quoting Whelan v. Longo, 23 A.D.3d 459, 808 N.Y.S.2d 95 (N.Y.App.Div.2005)). Here, since Aery properly listed his suit against Maroone in the Schedule “B” form of his bankruptcy plan, and since he is a Chapter 13 debtor, the trial court erred in finding that he lacked standing to individually pursue the circuit court action.

Damages Under Florida’s Whistleblower Act

As codified in section 448.102, Florida’s Whistleblower Act (“FWA”) is an exception to Florida’s at-will employment doctrine, Schultz v. Tampa Elec. Co., 704 So.2d 605, 605 (Fla. 2d DCA 1997), in that it “provides employees a cause of action against employers who wrongfully discharge them for ... objecting to or refusing to participate in the employer’s illegal practices.” Vanacore v. UNC Ardco Inc., 697 So.2d 892, 893 (Fla. 4th DCA 1997) (citations omitted). As a statute that serves a remedial purpose, the FWA “should be construed liberally in favor of granting access to the remedy so as not to frustrate the legislative intent.” Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1132 (Fla. 4th DCA 2003). Moreover, due to similarities in application, the Eleventh Circuit has recognized that “retaliation claims under the [FWA] are analyzed in the same manner as Title VII retaliation claims.” U.S. ex rel. Vargas v. Lackmann Food Serv., Inc., 510 F.Supp.2d *913 957, 968 (M.D.Fla.2007) (citing Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir.2000)).
When a plaintiff prevails on a private-sector FWA claim, “the court may order relief’ in the form of, inter alia, “[c]ompensation for lost wages, benefits, and other remuneration” and “[a]ny other compensatory damages allowable at law.” § 448.103(2)(d)-(e), Fla. Stat. (2005). The plain and unambiguous language of section 448.103(2)(e) “authorizes the court to award compensatory damages” without limitation to mere “economic damages,” since any other interpretation “would render the catch-all provision of subsection (e) meaningless.” Wood v. Cellco P’ship, No. 8:06-CV-687-T-27TBM, 2007 WL 917300, at *5 (M.D.Fla. Mar.23, 2007). As a result, given the FWA’s liberal construction, damages in the form of emotional distress are recoverable under section 448.103(2)(e) as a form of compensatory damage. Cf. Scott v. Otis Elevator Co., 572 So.2d 902, 903 (Fla.1990) (explaining, within the context of the worker’s compensation anti-retaliation provision, that wrongful discharge suits sound in intentional tort, making “damages for emotional distress ... recoverable”). Thus, even if Aery were not entitled to lost wages, his suit still could proceed on the theory that the wrongful discharge caused him mental anguish.

Judicial Estoppel

In ruling upon Maroone’s motion for summary judgment, the trial court found Aery to be judicially estopped from recovering the lost wages that accrued after May 25, 2005, since, on that date, he successfully attained social security benefits on the strength of his statements affirming his total disability. Assuming that the obtaining of social security disability benefits could be a basis for judicial estop-pel in this case,[2] that doctrine has no application since Aery has not taken conflicting positions — he contends that Maroone’s statutory violation caused his total disability-
As this Court has previously explained, Florida’s general rule of judicial estoppel can be stated as follows:
A claim or position successfully maintained in a former action or judicial proceeding bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, to the prejudice of the adverse party, where the parties are the same in both actions, subject to the “special fairness *914 and policy considerations” exception to the mutuality of parties requirement.
Grau v. Provident Life & Accident Ins. Co., 899 So.2d 396, 400 (Fla. 4th DCA 2005) (footnotes omitted). The purpose of judicial estoppel is “to ‘preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.’ ” Griffith v. Wal-Mart Stores, Inc., 135 F.3d 376, 380 (6th Cir.1998) (quoting Teledyne Indus., Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir.1990)).
By way of illustration, in Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061, 1063 (Fla.2001), the plaintiff sued an insurance company under the theory of promissory estoppel for representations made to him by the insurer’s agent regarding his policy’s coverage. After he received what he perceived to be an insufficient $25,000 jury verdict following trial, the plaintiff dismissed his claim with prejudice before judgment was entered. Id. With his previous claim dismissed, the plaintiff then brought a separate suit, this time claiming, contrary to his previous suit, that the insurer’s agent had negligently failed to procure any insurance coverage. Id. Under such circumstances, the Supreme Court held that the plaintiff was barred from making the latter argument since he was “attempting ‘to make a mockery out of justice’ by asserting inconsistent positions,” claiming existence of coverage in one case and its non-existence in the other. Id. at 1066.
Here, unlike the plaintiff in Blumberg, Aery has not taken a position in this case that entirely conflicts with the position he took to obtain social security disability benefits. The gravamen of Aery’s claim for future lost wages is based not on his ability to work, but on the allegation that Maroone’s alleged violation of FWA caused his total disability, forcing him to receive less pay than he would have received had the violation not occurred. Nothing about this contention conflicts with his position in the social security proceeding that he was totally disabled. While the causal link between the firing and the alleged disability is tenuous, there is an issue of fact sufficient to avoid partial summary judgment.

Duty to Mitigate

As a separate ground for granting summary judgment, the trial court found that Aery would not be entitled to lost wages after May 25, 2005, the date he applied for disability benefits, since he failed to mitigate his damages by retiring and not seeking equivalent employment. If Maroone’s alleged FWA violation caused Aery’s disability and resulting inability to work, Aery’s duty to mitigate damages by finding other employment would be discharged.
A court’s purpose in awarding lost wages is to “make the plaintiff ‘whole,’ to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal [acts] of the employer.” Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1561 (11th Cir.1988). As an equitable award, such damages will typically consist of either back pay, front pay, or both. See Hudson v. Chertoff 473 F.Supp.2d 1292, 1299 (S.D.Fla.2007) (quoting Szedlock v. Tenet, 139 F.Supp.2d 725, 733 (E.D.Va.2001)).
In awarding back pay, “the trial court must determine what the employee would have earned had she not been the victim ..., and must subtract from th[at] figure the amount of actual interim earnings.” E.E.O.C. v. Joe’s Stone Crab, Inc., 15 F.Supp.2d 1364, 1378 (S.D.Fla.1998). Front pay, on the other hand, “is simply money awarded for lost compensation dur *915 ing the period between judgment and reinstatement or in lieu of reinstatement.” Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). While reinstatement, when feasible, is typically “the preferred remedy” for a wrongful firing, Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1346 (9th Cir.1987), front pay may be applied where “ ‘reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result’ ” of the firing. Haines City HMA, Inc. v. Carter, 948 So.2d 904, 905 n. 2 (Fla. 2d DCA 2007) (quoting Pollard, 532 U.S. at 846, 121 S.Ct. 1946) (emphasis added).
In seeking back or front pay, the plaintiff “must mitigate her damages by seeking employment ‘substantially equivalent’ to the position [from which] she was” terminated. Reiner v. Family Ford, Inc., 146 F.Supp.2d 1279, 1287 (M.D.Fla.2001) (quoting Joe’s Stone Crab, 15 F.Supp.2d at 1378) (internal quotations omitted); Szedlock, 139 F.Supp.2d at 733-34 (“While a Title VII plaintiff is generally entitled to back pay ‘as a matter of course,’ the right of a plaintiff to claim back pay is limited by a claimant’s statutory duty to mitigate the employee’s damages.” (footnote omitted)). However, the defendant/employer “bears the burden to allege and prove that the plaintiff failed in that regard,” Pennsylvania State Police v. Suders, 542 U.S. 129, 152, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), and the failure to mitigate will be used only to “limit the amount of ... pay available.” Castle, 837 F.2d at 1562 (emphasis added). Moreover, “[t]he employer must show that the claimant failed to exercise ‘reasonable diligence to locate other suitable employment and [or] maintain a suitable job once it is located.’” Richardson v. Tricorn Pictures & Prods., Inc., 334 F.Supp.2d 1303, 1310 (S.D.Fla.2004) (quoting Baker v. John Morrell & Co., 263 F.Supp.2d 1161, 1179 (N.D.Iowa 2003)).
Under this doctrine, “[c]ourts have generally excluded periods of unavailability, such as periods of disability, from computation of [front or] back pay awards,” since holding otherwise would provide the plaintiff with a windfall. Sowers v. Kemira, Inc., 701 F.Supp. 809, 826 (S.D.Ga.1988). However, where “the disability would not have occurred but for the employer’s” act, “[a] different rule is justified.” Id.; see, e.g., Arnold v. City of Seminole, 614 F.Supp. 853, 871, 873 (E.D.Okla.1985) (finding front and back pay to be warranted where the eom-plained-of sexual harassment caused the plaintiff to endure psychological disability). Under those circumstances, the claimant may be entitled to lost wages “where the defendant’s ... conduct caused the disability,” since holding otherwise would allow an employer to get off the hook for forcing the plaintiff out of the job market. Lathem v. Dep’t of Children & Youth Servs., 172 F.3d 786, 794 (11th Cir.1999); see, e.g., Gotthardt v. Nat’l R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir.1999) (finding that a trial court did not abuse its discretion in ordering front pay instead of reinstatement where “[t]he evidence supported] the district court’s finding that [the plaintiffs] medical and psychological condition, by making her ‘unable to work for Amtrak’ and ‘preventing] her from obtaining employment in another field of work,’ would make reinstatement impossible”).
In this case, despite struggling through a period of depression, Aery obtained similar employment in Leesburg, Florida. After he was fired for what he believed to be another unjustified reason, Aery contends that he lost the ability to work and sought the only form of income he could acquire — disability benefits. *916 Aery cannot be required to mitigate his damages by working if his disability and inability to work were caused by Ma-roone’s alleged FWA violation. Because there are disputed issues of fact, summary judgment was inappropriate on the issue of mitigation of damages in this case.

Failure to State a Cause of Action

Although not addressed in the trial court’s order, Maroone argues on appeal that the third amended complaint failed to state a cause of action under the FWA since Aery did not specifically tell his supervisor what laws the body shop manager allegedly was breaking.
To establish a prima facie case under the FWA, Aery was required to show “1) that [ ]he objected to or refused to participate in any illegal activity, policy or practice of [Maroone]; 2)[ ]he suffered an adverse employment action; and 3) the adverse employment action was causally linked to h[is] objection or refusal.” Gleason v. Roche Labs., Inc., 745 F.Supp.2d 1262, 1270 (M.D.Fla.2010). “Once the pri-ma facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action.” Rice-Lamar, 853 So.2d at 1133 (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998)). Thereafter, “[t]he plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.” Id.
To satisfy the first prong of the above-mentioned standard, Aery was required to show that he ‘“objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer.’ ” Pinder v. Bahamasair Holdings Ltd., Inc., 661 F.Supp.2d 1348, 1351 (S.D.Fla.2009) (quoting McIntyre v. Delhaize Am., Inc., No. 8:07-CV-2370-T-30TB M, 2009 WL 1039557, at *3 (M.D.Fla. Apr.17, 2009)). In meeting this standard, however, all that is required is that the “employee have a good faith, objectively reasonable belief that h[is] activity is protected by the statute.” Luna v. Walgreen Co., 575 F.Supp.2d 1326, 1343 (S.D.Fla.2008). Here, in the light most favorable to the non-moving party, the evidence shows that Aery observed the body shop manager commit acts which, if true, appear to be illegal, and which Aery could have reasonably believed were illegal. By immediately and repeatedly reporting this matter to his superiors and describing these acts as “against the law,” Aery created a sufficient prima facie showing to satisfy this requirement. It was not necessary that Aery provide his employer with statutory and case law citations to support his claim of illegal conduct.
We do not address the “temporal proximity”/causation issue raised by Maroone because it was not raised in the circuit court.

Reversed and remanded.

WARNER and FORST, JJ., concur.

. Maroone is now AutoNation.

. Neither party has briefed the issue of whether a claim for disability benefits constitutes a "former action or judicial proceeding” for the purposes of judicial estoppel. We therefore do not address the merits of the issue. See Hagood v. Wells Fargo N.A., 112 So.3d 770, 771 n. 2 (Fla. 5th DCA 2013). Nonetheless, we note that in Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 797, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the United States Supreme Court held, in the context of Americans with Disabilities Act claims, that the "pursuit, and receipt, of [Social Security Disability Insurance] benefits does not automatically estop the recipient from pursuing an ADA claim.” However, to survive a defendant's motion for summary judgment, "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work” but "must explain why that SSDI contention is consistent with her ADA claim.” Id.; see also Smith v. Avatar Props., Inc., 714 So.2d 1103, 1108 (Fla. 5th DCA 1998) ("[T]he determination of whether an individual who has certified total disability to the Social Security Administration is judicially estopped from later bringing a claim under the [Florida Civil Rights Act or] ADA will depend upon the facts of the case, including the specific statements made in the application for disability benefits and other relevant evident in the record.” (citations omitted)).