Carolina THOMAS, Plaintiff,

v.

TYCO INTERNATIONAL MAN-
AGEMENT COMPANY,
LLC, Defendant.

CASE NO. 16–80501–CIV–MARRA

United States District Court,
S.D. Florida.

Entered 03/31/2017

Raymond C. Fay, Fay Law Group PLLC, Washington, DC, Cathleen Ann Scott, Scott Wagner & Associates, P.A., Jupiter, FL, for Plaintiff.

Dee Anna Drennan Hays, Kevin Douglas Zwetsch, Ina Franziska Crawford, Ogletree, Deakins, Nash, Smoak, and Stewart, P.C., Tampa, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

KENNETH A. MARRA, United States District Judge

This Cause is before the Court upon Defendant Tyco International Management Company, LLC's ("Tyco" and "Defendant") Motion to Dismiss Plaintiff's Amended Complaint ("Motion") (DE 13). Plaintiff filed a Response (DE 22) in opposition to the Motion. Defendant did not file a Reply. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

For the reasons stated below, the Court concludes that Plaintiff has stated plausible claims for relief under the Sarbanes–Oxley Act ("SOX"), the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd Frank"), and Florida's Whistleblower Act ("FWA"). Therefore, as more fully discussed below, Defendant's Motion to Dismiss is denied.

# I. BACKGROUND

The facts relevant to the Motion to Dismiss, as alleged in the Amended Complaint (DE 8), which are taken as true for purposes of the Motion, are as follows:

## A. The Parties

Plaintiff Carolina Thomas, an accountant, was employed as a Manager, Financial Reporting, for Tyco. (DE 8, Am. Compl. ¶ 6.) Plaintiff was responsible for managing and supporting tasks concerning the centralization of Tyco's financial reporting operations in North America. (*Id.*)

Defendant Tyco is a subsidiary of Tyco International plc, a global business with over $10 billion in annual revenues, providing security products and services, fire detection and suppression products and services, and life safety products. (*Id.* ¶ 4.)

## B. Credentials of New Accountant

While employed by Tyco, Plaintiff learned that Alida Garcia, a Tyco contractor who was applying for a manager position at Tyco, misrepresented in her resume that she was a CPA and had a master's degree. (*Id.* ¶ 10.) In addition, in Plaintiff's view, Garcia was untrained in generally accepted accounting principles ("GAAP") used in the United States. (*Id.* ¶ 39.)

Plaintiff objected to Garcia's use of false credentials and lack of credentials at a meeting on September 26, 2013, at which the following Tyco employees were present: Terri Lippman, Plaintiff's direct supervisor; Janine Albano, Director, of Financial Reporting North America; and Ozlem Fonda of Human Resources. (*Id.* ¶¶ 11–12.) Despite Plaintiff's complaints, Tyco hired Garcia for the new manager position. (*Id.* ¶ 12.) In the announcement of Garcia's appointment, Tyco listed Garcia as having a Colombian CPA and master's degree, neither of which she possessed. (*Id.*)

In her new position, Garcia was charged with the responsibility of reporting $4 billion per year to Tyco's financial headquarters and ultimately to the Securities Exchange Commission ("SEC"). (*Id.* ¶ 39.) Plaintiff believed that the presence of Garcia in her position posed a threat to the integrity of Tyco's financial management and a significant risk of loss to shareholders due to her false credentials and lack of qualifications. (*Id.* ¶¶ 26, 39.) According to the Complaint, Plaintiff "reasonably believed ... that Tyco's employment of Garcia violated the controls provisions in section 404 of SOX [ because] ... Garcia was untrained in generally accepted accounting principles ("GAAP") used in the United States, never validated her foreign degree to obtain that knowledge, and was unqualified to be a financial reporting manager in charge of reporting $4.0 billion per year to Tyco financial headquarters in Princeton, New Jersey and ultimately to the SEC ...." (*Id.* ¶ 39.)

Approximately two months after Plaintiff objected to Garcia's credentials, Albano and Lippman presented Plaintiff with negative comments on her performance review for the first time since her career began at

Tyco in 2005. (*Id.* ¶ 13.) Plaintiff also received a smaller bonus payout than most of her peers. (*Id.*)

### C. Unreliable Process for Checking Accuracy of Financial Data

While employed by Tyco, Plaintiff began to have doubts about the reliability of a new monthly tie-out process used to ensure that the consolidated financial data reported to the SEC agreed with financial data in Tyco's general ledger system due to the following: (1) the lack of involvement of IT and compliance personnel; (2) the lack of a formal means to approve changes to data; and (3) the lack of the ability to detect manual manipulations to the data. (*Id.* ¶¶ 16–18.) Plaintiff conducted testing that showed that the new process and file system were deficient. (*Id.* ¶ 18.) Plaintiff reported those test results to internal audit and forensic accounting. (*Id.*) Plaintiff believed there could be material misstatements in SEC filings based upon Tyco's use of the deficient tie-out process. (*Id.* ¶¶ 19, 34.) According to the Complaint, "Plaintiff reasonably believed that the workflow deficiencies violated section 404 of SOX, which requires that the process used to generate financial statements be accurate and meet an accepted industry standard." (*Id.* ¶ 24.)

### D. Plaintiff files a Complaint with Ombudsman

On December 2, 2013, Plaintiff filed a complaint with the internal ombudsman regarding Garcia's credentials and the unreliable tie-out process. (*Id.* ¶¶ 19–23.) Soon thereafter, Albano assigned Plaintiff's reporting responsibilities for three products to Garcia, and Plaintiff was disciplined for questioning the reassignment. (*Id.* ¶¶ 20–21.) Also, Plaintiff learned that Garcia was assigned a fourth direct report while Plaintiff only had three direct reports. (*Id.* ¶ 25.)

Ultimately, the ombudsman closed the case, after concluding that there was no wrongdoing. (*Id.* ¶ 26.) Although Tyco's attorney was alerted to the problematic tie-out process as part of the ombudsman case, the issue was not seriously investigated. (*Id.* ¶ 29.)

### E. Plaintiff files an OSHA Complaint and Communicates with SEC

In her complaint filed with the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") on March 2, 2014, Plaintiff complained about "the threat to the integrity of Tyco's financial management through the employment of Garcia with her lack of credentials and qualifications" and the deficiencies in the financial workflow system. (*Id.* ¶ 26.) When Tyco's attorney learned that Plaintiff had reported the latter to the Department of Labor, the attorney immediately engaged Tyco's compliance, internal audit, and forensic accounting teams in an internal investigation. (*Id.* ¶ 29.) Ultimately, Albano was ordered to discontinue using the tie-out system, keep paper copies of all approvals, and engage IT in any type of workflow system. (*Id.* ¶ 30.)

At Plaintiff's request, the OSHA complaint was administratively dismissed so that she could pursue this action. (*Id.* ¶ 31.)

When Plaintiff filed her claim with OSHA, the Department of Labor notified the SEC, which communicated with Plaintiff almost daily until the time of her termination. (*Id.* ¶ 32.) Plaintiff provided the SEC with details about her OSHA complaint and completed the SEC's question-

naire for complaints under SOX and Dodd–Frank. (*Id.* ¶ 33.)

### F. Plaintiff's Employment is Terminated

Plaintiff's employment was terminated on May 14, 2014. (*Id.* ¶ 40.) The SEC's investigation was still ongoing at the time of the termination. (*Id.*)

Tyco's stated reason for Plaintiff's termination was the accusation that Plaintiff had improperly accessed the records of another employee in violation of company policy. (*Id.* ¶ 40.) That accusation was unfounded because Plaintiff had properly obtained the records in question through sources in Colombia, and the company policy allegedly violated was later rescinded by Tyco as part of a settlement of Plaintiff's complaint with the National Labor Relations Board. (*Id.* ¶¶ 45–47.)

### G. Plaintiff Files Suit

Plaintiff timely filed a three-count Amended Complaint against Defendant in this Court, asserting the following claims: violation of Florida's Whistleblower Act, § 448.102, Fla. Stat. (Count I), retaliation in violation of the Sarbanes–Oxley Act, 18 U.S.C. § 1514A(a) (Count II), and retaliation in violation of the Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(A) (Count III). (DE 8.)

In response, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, seeking dismissal of all three counts. (DE 13.) Defendant argues that none of Plaintiff's complaints are protected activities under FWA, SOX, or Dodd–Frank, that there is no causal relation between her alleged complaints and termination for purposes of the Dodd–Frank claim, and

that Plaintiff's complaint is an impermissible "shotgun" pleading. The Court addresses Defendant's arguments, as well as Plaintiff's responses thereto, below.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, 129 S.Ct. 1937. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. DISCUSSION

### A. SOX Retaliation Claim (Count II)

In Count II of the Amended Complaint, Plaintiff alleges that Defendant terminated her and took other adverse employment actions against her in retaliation for complaining about the falsity and inadequacy of the credentials of an accountant charged with the task of reporting $4 billion in revenue to Tyco's financial headquarters and the unreliability of Defendant's process of checking the accuracy of its consolidated financial data, in violation of the Sarbanes–Oxley Act, 18 U.S.C. § 1514A.

 SOX prohibits publicly traded companies from retaliating against an employee because of any lawful act done by the employee "to provide information … regarding any conduct which the employee *reasonably* believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to … a Federal regulatory or law enforcement agency … or … a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) …. 18 U.S.C. § 1514A(a)(1)(A), (C) (emphasis added). To prevail on a SOX retaliation claim, section 1514A(a)(1) requires an employee to demonstrate both a subjective belief and an objectively reasonable belief that the company's conduct violated a law listed in the section. *Gale v. U.S. Dep't of Labor*, 384 Fed.Appx. 926, 930 (11th Cir. 2010). "[T]he inquiry into whether an employee had a reasonable belief [for purposes of a SOX retaliation claim] is necessarily fact-dependent, varying with the circumstances of the case." *Rhinehimer v. U.S. Bancorp Investments, Inc.*, 787 F.3d 797, 811–12 (6th Cir. 2015).

Plaintiff alleges that she reasonably believed that Defendant violated SOX § 404, 15 U.S.C. § 7262 (pertaining to management's assessment of internal controls), in violation of the SOX Act, 18 U.S.C. § 1514A. SOX § 404 provides, in relevant part, as follows:

> The Commission shall prescribe rules requiring each annual report required by section 78m(a) or 78o(d) of this title to contain an internal control report, which shall—(1) state the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting; and (2) contain an assessment, as of the end of the most recent fiscal year of the issuer, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting.

15 U.S.C. § 7262. Defendant contends that the SOX retaliation claim should be dismissed because the factual allegations do not demonstrate that a SOX § 404 violation occurred. The Court must therefore consider whether Plaintiff's complaints concerning the falsity and inadequacy of the credentials of an accountant charged with the task of reporting $4 billion in revenue to Tyco's financial headquarters and the unreliability of Defendant's process of checking the accuracy of its consolidated financial data constitute protected activities for purposes of a SOX retaliation claim.

### 1. Veracity and Adequacy of Credentials of Accountant Responsible for Financial Reporting

Narrowly characterizing the scope of Plaintiff's internal complaints, Defendant

argues that Plaintiff's complaints regarding allegedly false credentials in a colleague's resume is a personnel matter that falls outside the purview of SOX. Plaintiff responds that because Alida Garcia was untrained and unqualified to perform her role of reporting $4 billion per year to Tyco's financial headquarters, Tyco's employment of Garcia in that role violated the internal control provisions of SOX § 404.

Defendant's position that complaints about questionable personnel matters fall outside the protection of SOX is well-supported. In *Harvey v. Home Depot U.S.A., Inc.*, No. 04-114, 2006 WL 3246905, at *11 (U.S. Dep't of Labor June 2, 2006), which is cited by Defendant, the Administrative Review Board stated the general proposition that "[p]roviding information to management about questionable personnel actions, racially discriminatory practices, [or] executive decisions or corporate expenditures with which the employee disagrees ..., standing alone, is not protected conduct under the SOX." In that case, the employee complained about racial discrimination and other employment matters to the company's board of directors and executives. *Id.* The Administrative Review Board agreed that the employee's concerns did not state a claim for relief under SOX. *Id.*

█ In this case, however, as alleged in the Amended Complaint, Plaintiff's internal complaints regarding Tyco's employment of Garcia were apparently broader

than objecting to the alleged falsity of the credentials of another employee. Drawing all reasonable inferences in Plaintiff's favor, it appears that Plaintiff's complaints encompassed an objection to Tyco's employment of an individual who lacked the credentials and integrity to handle a key role managing the financial reporting of $4 billion in revenue. (DE 8, Am. Compl. ¶¶ 12, 39.) Plaintiff argues that Tyco's employment of Garcia violated the internal control provisions of SOX § 404, because Garcia "was untrained in generally accepted accounting principles ("GAAP") used in the United States, never validated her foreign degree to obtain that knowledge, and was unqualified to be a financial reporting manager in charge of reporting $4.0 billion per year to Tyco financial headquarters in Princeton, New Jersey and ultimately to the SEC." (*Id.* ¶ 39.)[1]

A company's employment of competent accounting personnel is part and parcel of an effective internal control structure, which ensures the reliability of accurate financial statements. *See generally Establishment and Maintenance of Internal Controls*, WGL Corp. Inc. Tax Acct. 7.02, 2013 WL 6389666, at *2 ("The control environment component is considered the foundation of all other components of internal control. ... Factors entering into and making up the control environment include the integrity, ethical values and competence of the corporation's people ....").

The lack of a sufficient number of competent accounting personnel with knowl-

---

1. Based upon the allegations of the Amended Complaint, it appears that Plaintiff holds a bachelor's degree in accounting and management information systems (not a master's degree), and there is no indication that Plaintiff boasts the CPA designation, and, yet, she sought the same manager position that was eventually given to Alida Garcia. (DE 8, Am. Compl. ¶¶ 5–8.) Hence, Plaintiff's contention

does not appear to be that only an individual with a master's degree and CPA designation was qualified for the manager position held by Garcia. Rather, regarding Plaintiff's concern that Garcia was unqualified, Plaintiff appears to be challenging Garcia's lack of knowledge, experience, and training in GAAP used in the United States.

edge, experience, and training in U.S. GAAP could lead to a material weakness in a company's internal control over financial reporting. *See Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *1 (N.D. Cal. Jan. 4, 2017) (disclosing a material weakness in the company's annual report filed with the SEC resulting from "an insufficient number of accounting personnel with appropriate knowledge, experience or training in U.S. GAAP"); *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 CIV. 1405 (RPP), 2009 WL 174656, at *9 (S.D.N.Y. Jan. 26, 2009) (reporting in its annual report filed with the SEC that its evaluation of internal controls over financial reporting determined that the company did not maintain enough personnel with appropriate accounting skills in its financial reporting function).

Here, Plaintiff allegedly voiced her concern over Tyco's consideration and ultimate employment of an unqualified and dishonest accountant given the responsibility of managing the reporting $4 billion in revenue to Tyco's financial management. Yet, Tyco seemingly ignored her concerns, hiring the manager and then giving her only more responsibility and thereby raising the inference that Tyco did not evaluate (much less disclose) the presence of the inadequate and untrained accounting professional as a material weakness in its internal control over financial reporting. Given the allegedly incompetent manager's high level of responsibility for financial reporting at Tyco, and taking into account Plaintiff's experience and knowledge in financial reporting, the Court cannot conclude as a matter of law that it was unreasonable for Plaintiff to believe that Tyco had violated its obligation to assess and disclose material weaknesses in its internal control over financial reporting. The inquiry into whether Plaintiff had a reasonable

belief for purposes of her SOX retaliation claim is a fact-dependent one inappropriate for resolution at the motion to dismiss stage. *Rhinehimer*, 787 F.3d at 811–12. Accordingly, the Court concludes that Plaintiff's complaints regarding Garcia's credentials constitute protected activity for purposes of her SOX retaliation claim.

### 2. Security and Reliability of Consolidated Financial Data

■ Defendant argues that the SOX retaliation claim should be dismissed to the extent that it is based upon Plaintiff's complaints regarding deficiencies in Tyco's monthly tie-out process. Defendant argues that the complaints relate to violations of internal company policies, which are not protected under SOX. In addition, Defendant emphasizes that while Plaintiff alleges in the Amended Complaint that these deficiencies could result in misstatements or omissions in SEC filings, there is no allegation that an actual violation occurred here. Based upon these arguments, Defendant characterizes Plaintiff's averments as mere "alleged breaches of internal company policies and contingent future violations." (DE 13, Def.'s Mot. at 13.)

■ After a careful review of the Amended Complaint, the Court concludes that the allegations sufficiently state a SOX retaliation claim based upon the inadequate tie-out process. As to Defendant's argument that Plaintiff's complaint relates only to breaches of internal policy, the allegations of the Amended Complaint show that Plaintiff complained about the lack of data security, the lack of an appropriate approval process, and the lack of segregation of duties in the process used to verify the accuracy of consolidated financial information. Data security, approv-

als, and segregation of duties are controls that exist to ensure the accuracy of financial reporting. *See Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934,* Release Nos. 33–8810; 34–55929; FR–77; File No. S7–24–06, 72 Fed. Reg. 35,343 n.27 (June 27, 2007) ("Controls have unique characteristics, for example, they can be: Automated or manual; reconciliations; segregation of duties; review and approval authorizations; safeguarding and accountability of assets; preventing or detecting error or fraud."). An employee's complaint concerning inadequate internal control over financial reporting can constitute protected activity. *Wiggins v. ING U.S., Inc.,* No. 3:14-CV-01089 (JCH), 2015 WL 8779559, at *7 (D. Conn. Dec. 15, 2015) (holding that complaint adequately alleged that plaintiff reasonably believed that her employer had violated SOX § 404, requiring it to establish adequate internal controls, when she raised concerns regarding inaccuracies in her employer's market value assessments).

In response to Plaintiff's internal complaints about the deficiencies in internal control over financial reporting, Tyco initially failed to investigate the matter, raising the reasonable inference that Tyco did not evaluate the change[2] in its internal control over financial reporting and that therefore a violation of its obligations under SOX § 404 had occurred. (DE 8, Am. Compl. ¶ 29.) The fact that Tyco ultimately took action by ordering Plaintiff's supervisor to discontinue the use of the tie-out process, obtain approvals in writing, and engage the involvement of IT points to the materiality of the weaknesses in Tyco's internal control over financial reporting. (*Id.* ¶ 30.) Based upon these allegations, the Court finds that the Amended Complaint contains facts sufficient to allow the inference that it would have been reasonable for a person in Plaintiff's position to believe that Tyco was violating its obligations under SOX § 404 to assess and disclose the effectiveness of its internal control over financial reporting. *See Klopfenstein v. PCC Flow Technologies Holdings, Inc.,* ARB Case No. 04–419, slip op. at 17–18, 2006 WL 3246904 (ARB May 31, 2006) (holding that it could not be determined as a matter of law whether complainant engaged in protected activity when he reported incompetence in the company's internal controls).

 Although Tyco argues in the Motion to Dismiss that the allegations of the Amended Complaint do not show that an actual violation occurred, no such allegation is required. It is sufficient under SOX (as well as Frank–Dodd and FWA) that Plaintiff held an "objectively reasonable belief" that Tyco violated SOX § 404. *See Gale,* 384 Fed.Appx. at 930.[3] In this regard, "an employee need not establish the

---

**2.** Pursuant to 17 C.F.R. § 240.13a-15, the management of each such issuer required to file an annual report must evaluate any change in the issuer's internal control over financial reporting that occurred during each of the issuer's fiscal quarters. 17 C.F.R. § 240.13a-15.

**3.** In addition, "[a] whistleblower complaint concerning a violation about to be committed is protected as long as the employee reasonably believes that the violation is likely to

happen. Such a belief must be grounded in facts known to the employee, but the employee need not wait until a law has actually been broken to safely register his or her concern." *Sylvester v. Parexel Int'l LLC,* No. 07-123, 2011 WL 2517148, at *14 (U.S. Dep't of Labor May 25, 2011). Tyco failed to file a Reply challenging Plaintiff's well-supported position that recent case law requires only a reasonable belief that a violation is likely to happen.

reasonableness of his or her belief as to each element of the violation. Instead, the reasonableness of the employee's belief will depend on the totality of the circumstances known (or reasonably albeit mistakenly perceived) by the employee at the time of the complaint, analyzed in light of the employee's training and experience." *Rhinehimer*, 787 F.3d at 811–12; *Burns v. Medtronic, Inc.*, No. 8:15-CV-2330-T17-TBM, 2016 WL 3769369, at *4 (M.D. Fla. July 12, 2016) (rejecting defendants' argument that an employee must establish the reasonableness of his or her belief as to each element of the fraud violation underlying a SOX retaliation claim). Here, the Amended Complaint contains sufficient facts to raise the inference that Tyco failed to investigate material deficiencies in its internal control and therefore that Plaintiff held a reasonable belief that a SOX § 404 violation had occurred.

For all of these reasons, the Court denies the Motion to Dismiss as to the SOX retaliation claim.

## B. Dodd–Frank Retaliation Claim (Count III)

In Count III of the Amended Complaint, Plaintiff alleges that Defendant terminated her and took other adverse employment actions against her in violation of the Dodd–Frank Reform Act, 15 U.S.C. § 78u-6 (Count II).[4] In the Motion to Dismiss, Defendant argues that the Amended Complaint fails to allege a sufficient causal connection between the protected activity and Plaintiff's termination for the following three reasons: (1) Plaintiff admits that she was terminated because she violated company policy; (2) Plaintiff does not allege

with any specificity that her complaints to the SEC were a factor in Plaintiff's termination; and (3) other employees who complained were not terminated. (DE 13, Motion to Dismiss at 15.) The Court rejects each of these three arguments.

### 1. Tyco's Stated Reason for Plaintiff's Termination

■ It is true, as Defendant suggests, that Plaintiff admits that Tyco's stated reason for terminating her employment was the violation of a company policy, to wit, accessing the records of another employee. However, the Amended Complaint also contains detailed allegations demonstrating why Tyco's stated reason was an unlawful pretext and that the real reason for the termination decision was "retaliation for her whistleblowing actions." (DE 8, Am. Compl. ¶¶ 44–48.) In particular, to support her claim of pretext, Plaintiff alleges, among other things, that the accusation was unfounded because she properly obtained the records through sources in Colombia, and that the policy itself was unlawful and was later rescinded by Tyco as part of a settlement of Plaintiff's complaint with the National Labor Relations Board. (*Id.* ¶¶ 45–47.) Given these allegations, the Court rejects Defendant's suggestion that Plaintiff admits in her pleading that Tyco's stated reason for terminating her employment was not a pretext.

### 2. Failure to Allege Retaliation Stemming from the SEC Complaint

■ Defendant's argument that Plaintiff's complaints to the SEC were not a

4. Defendant's argument in the Motion to Dismiss that Plaintiff's Dodd–Frank claim fails because Plaintiff did not engage in protected activity is based upon the same reasons that Defendant offered in support of its argument that the SOX retaliation claim fails, which the Court has already rejected above. In addition, the Court notes that given that the Court of Appeals for the Eleventh Circuit has yet to define the elements of a Frank–Dodd claim, the Court declines to articulate them at this juncture, especially since it is unnecessary to do so to rule on the pending Motion to Dismiss.

factor in the termination decision is also rejected. As indicated by Plaintiff in her Response to the Motion to Dismiss, courts have recognized that protection from retaliation under Dodd–Frank extends to "whistleblowers" who suffer retaliation based upon any disclosure that is protected under SOX, even a disclosure that was made internally to a supervisor. *Englehart v. Career Educ. Corp.*, No. 8:14-CV-444-T-33EAJ, 2014 WL 2619501, at *8 (M.D. Fla. May 12, 2014); *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 627–28 (5th Cir. 2013).[5]

■ Here, the Amended Complaint alleges that Plaintiff both provided information to the SEC relating to a SOX § 404 violation and suffered retaliation based upon her SOX-protected internal disclosures and her OSHA complaint. The fact that Plaintiff did not suffer retaliation specifically in response to her complaints to the SEC is therefore irrelevant for purposes of her Dodd–Frank claim. Hence, Plaintiff's allegations are sufficient to state a Frank–Dodd claim notwithstanding Plaintiff's failure to allege that she was retaliated against because of the report to the SEC.

**3. Other Similarly Situated Employees**

Defendant's argument that a causal connection does not exist because other employees who complained were not terminated is unsupported by any case law. There is no requirement in the law governing Frank–Dodd claims (nor has Defendant pointed to any case law supporting the existence of such a requirement) that to show a causal connection a plaintiff must demonstrate that no other similarly situated employees were treated more favorably than her.

In summary, the Court rejects Defendant's various arguments for its position that the Amended Complaint fails to allege a sufficient causal connection between the protected activity and Plaintiff's termination. Therefore, the Court concludes that it must deny Defendant's Motion to Dismiss as to the Frank–Dodd claim.

**C. Florida's Whistleblower Act Claim (Count I)**

■ In Count I of the Amended Complaint, Plaintiff asserts a claim under Florida's Whistleblower Act, § 448.102, Fla. Stat., against Defendant. Pursuant to section 448.102 of the Florida Statutes, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has ... [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." § 448.102, Fla. Stat. In order to raise a successful claim of retaliatory discharge under the FWA, a claimant must demonstrate that: (1) he or she engaged in statutorily protected expression, (2) her or she suffered a materially adverse action of a type that would dissuade a reasonable em-

---

**5.** Tyco did not file a Reply or otherwise respond to Plaintiff's citation to *Englehart* as authority for the proposition that a plaintiff can state a claim under Dodd–Frank where he meets the definition of "whistleblower" and suffered retaliation based upon an internal disclosure protected under SOX. In addition, the Court notes that it declines to decide the issue (which is the subject of some recent debate) of whether protection under Frank–Dodd would extend to a plaintiff who did not provide information to the SEC, since the allegations of the Amended Complaint indicate that Plaintiff here did report information to the SEC and Defendant has not suggested that Plaintiff does not fall within the definition of "whistleblower" for purposes of the Dodd–Frank Act.

ployee from engaging in statutorily protected activity, and (3) there was some causal relation between the events. *Rutledge v. SunTrust Bank*, 262 Fed.Appx. 956, 958 (11th Cir. 2008).

To satisfy the first element of the above-mentioned standard, a plaintiff is "required to show that he objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Aery v. Wallace Lincoln–Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2013) (citation and internal quotation marks omitted). Significantly, however, in meeting this standard, all that is required is that the "employee have a good faith, objectively reasonable belief that h[is] activity is protected by the statute." *Id.* (quoting *Luna v. Walgreen Co.*, 575 F.Supp.2d 1326, 1343 (S.D. Fla. 2008)).[6]

Defendant argues that Plaintiff cannot establish the first element of her FWA claim, because the allegations of the Amended Complaint do not show a violation of any law, rule, or regulation but a breach of internal policy. As explained in detail above, the Court finds that the allegations of the Amended Complaint demonstrate that Plaintiff had a good faith, rea-sonable belief concerning Tyco's alleged violation of SOX § 404. As a result, the Court must deny the Motion to Dismiss to the extent that Defendant seeks dismissal of the FWA claim asserted in Count I.

### D. "Shotgun" Pleading Argument

Defendant argues the Amended Complaint in this case is a classic "shotgun pleading" and should be dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. As stated by the Eleventh Circuit, "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). A shotgun pleading is not sanctioned under Rule 8 because it imposes on the trial court the onerous task of ascertaining exactly what facts form the basis of the plaintiff's claims and sifting out all of the irrelevancies. *Id.*

Here, the Court concludes that the Amended Complaint does not amount to an impermissible "shotgun pleading." Although some of Plaintiff's counts incorporate the allegations of other counts, the incorporation has not impeded the Court's

---

**6.** In *Aery v. Wallace Lincoln–Mercury, LLC*, the Fourth District Court of Appeal held that to prevail on a FWA claim, a plaintiff must demonstrate that he or she held a good faith, reasonable belief that the actions of the employer violated the law. 118 So.3d 904, 916 (Fla. 4th DCA 2013). Subsequently, in *Kearns v. Farmer Acquisition Co.*, 157 So.3d 458, 465 (Fla. 2d DCA 2015), the Second District Court of Appeal interpreted the language of FWA to require an actual violation of the law. However, as the Middle District of Florida has ex-plained, *Aery* remains the controlling law on the issue because the discussion concerning the actual violation standard in *Kearns* was only in dicta. *Burns v. Medtronic, Inc.*, No. 8:15-CV-2330-T17-TBM, 2016 WL 3769369, at *5 (M.D. Fla. July 12, 2016); *Canalejo v. ADG, LLC*, No. 8:14-CV-17-T-MAP, 2015 WL 4992000, at *2 (M.D. Fla. Aug. 19, 2015). Hence, despite the recent criticism of *Aery* in the case law, this Court is bound to apply *Aery*.

ability to rule on the Motion to Dismiss. The Court and Defendant are able to ascertain exactly what facts form the basis of each of Plaintiff's claims. Accordingly, the Court rejects Defendant's argument that the Amended Complaint is an impermissible "shotgun pleading." *See Watts v. City of Port St. Lucie, Fla.*, No. 2:15-CV-14192, 2015 WL 7736532, at *5 (S.D. Fla. Nov. 30, 2015) ("Although some counts of Plaintiff's Complaint do incorporate paragraphs in previous counts by reference, it is not an impermissible 'shotgun pleading,' because it does so only for convenience, and the Court is able to ascertain which paragraphs are relevant to each of the claims.").

## IV. CONCLUSION

Based upon the foregoing, this Court concludes that Plaintiff has stated plausible claims for relief under the Sarbanes–Oxley Act, the Dodd–Frank Wall Street Reform and Consumer Protection Act, and Florida's Whistleblower Act. Consequently, Defendant's Motion to Dismiss must be denied.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (DE 13) is **DENIED**. In addition, the Motion for a hearing (DE 25) is **DENIED** as moot. Defendant shall file an answer to the Amended Complaint within fourteen (14) days of the signature date of this Order.

**DONE AND SIGNED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of March, 2017.