DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LE PUBLICATIONS, INC., LIFE EXTENSION FOUNDATION BUYERS CLUB, INC.,** and **LIFE EXTENSION CLINICAL RESEARCH, INC.,**
Appellants,

v.

**RANDALL KOHL,**
Appellee.

No. 4D19-1913

[May 27, 2020]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Haimes, Judge; L.T. Case No. CACE-07-015624(14).

Clifford A. Wolff of Wolff Law, Fort Lauderdale, for appellants.

G. William Allen, Jr., Fort Lauderdale, for appellee.

FORST, J.

In this Florida whistleblower case, the defendants, LE Publications, Inc., Life Extension Foundation Buyers Club, Inc., and Life Extension Clinical Research, Inc., appeal from the trial court's final judgment entered on a jury verdict in favor of the plaintiff, Dr. Randall Kohl. The plaintiff cross-appeals, challenging the trial court's remittitur of his noneconomic damages award. The defendants raise several issues on appeal, but we write to address only one—whether the trial court erred in failing to direct a verdict for the defendants because the plaintiff failed to establish a prima facie case under the Florida Whistleblower Act. On that issue, we affirm. Finding no abuse of discretion as to the remaining points in both the appeal and cross-appeal, we affirm them without further discussion.

**Background**

On July 3, 2007, the plaintiff filed suit against the defendants. His amended complaint asserted a claim under section 448.102, Florida Statutes (2005), also known as Florida's Whistleblower Act ("FWA"). The amended complaint alleged that the defendants, who were in the business

of selling vitamins and supplements, fired the plaintiff from his position as a "Senior Editor" on July 7, 2005, in retaliation for reporting to upper management "serious violations of Federal Drug laws taking place at the Defendants' premises."

The defendants filed their answer and affirmative defenses. As affirmative defenses, the defendants asserted that the plaintiff's claim was barred for several reasons, including that the plaintiff failed to state a claim for which relief could be granted because he did not actually threaten to report any violation of law, nor was any practice of the defendants a violation of any law which would make the claim actionable.

In their joint pretrial stipulation, the parties stipulated that the plaintiff was: (1) an employee of defendant LE Publications, Inc.; (2) hired by the defendant on January 5, 2004; and (3) terminated by the defendant on July 7, 2005. The parties further stipulated that issues for trial resolution included whether the plaintiff was terminated for misconduct at work; for threatening to disclose alleged violations committed by the defendants to certain federal agencies; or for objecting to, or refusing to, participate in an activity, policy or practice of the employer which was in violation of a law, rule or regulation.

At trial, the plaintiff's evidence showed he was employed by the defendants—collectively referred to by the parties, trial court and witnesses as "Life Extension," "LE" or "LEF"—as a senior editor and that he also chaired the company's Institutional Review Board ("IRB"). The IRB's purpose was to monitor clinical trials/studies and evaluate protocol to ensure the health and safety of clinical trial subjects. The plaintiff testified that he became concerned after reading an article in the defendants' magazine about a migraine treatment study conducted by fellow employee, Dr. Dzugan. The plaintiff did some investigation and then wrote a note listing his concerns of FDA violations and requesting that his supervisor Dr. Joyal organize a meeting with Dr. Dzugan so the plaintiff could "critically address and correct FDA regulation violations at LEF . . . ." The plaintiff claimed this note was titled "Agenda for July 7 meeting with Dr. Joyal and [the plaintiff]" and that he hand-delivered it to Dr. Joyal on July 1, before he left for the holiday weekend. On his first day back after the holiday, the plaintiff was fired immediately.

The defendants presented testimony that they never received the plaintiff's note/agenda before this litigation began, that the plaintiff never reported an FDA problem to the company before he was fired, and that he was fired for legitimate, non-retaliatory reasons.

2

When the plaintiff rested, the defendants moved for a directed verdict, arguing the plaintiff failed to: (1) prove that any of the three defendants was his employer; (2) sue the right party, which was "Life Extension Scientific [sic], Inc."; and (3) rebut the defense that he was terminated for a legitimate non-retaliatory reason. The trial court denied the defendants' motion, and their renewed motion at the conclusion of all evidence. The jury returned a verdict for the plaintiff and awarded him damages for past lost earnings, mental anguish, and loss of dignity.

In their post-trial motion for directed verdict/to set aside the verdict/ for new trial, the defendants argued the plaintiff failed to establish a prima facie claim under the FWA for failure to prove: (1) the identity of his employer; (2) that the complained-of action was attributable to his employer; and (3) that the complained-of action was in violation of a law, rule or regulation. The defendants also moved for remittitur of the noneconomic damages award. The trial court denied all but the defendants' motion for remittitur, which the court granted in part. The trial court then entered final judgment for the plaintiff. This appeal and cross-appeal followed.

**Analysis**

The defendants argue they were entitled to a directed verdict because the evidence failed to establish a prima facie case under the FWA. Specifically, the defendants argue the plaintiff failed to present competent substantial evidence that: (1) each (or any) defendant was his "employer;" (2) the acts complained of were those of any defendant; and (3) an act of his employer was in violation of a law, rule or regulation. As discussed below, the defendants' arguments are unpreserved, waived and/or meritless.

"When deciding the appropriateness of a directed verdict . . . Florida trial and appellate courts use the test of whether the verdict . . . would be . . . supported by competent, substantial evidence." *Siegel v. Cross Senior Care, Inc.*, 239 So. 3d 738, 743 (Fla. 3d DCA 2018) (quoting *Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 303 (Fla. 5th DCA 2010)). "[A]n appellate court must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." *Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 250 (Fla. 4th DCA 2009).

The FWA prohibits an employer from taking retaliatory action against an employee because the employee has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in

violation of a law, rule, or regulation." § 448.102(3), Fla. Stat. (2005). "'Law, rule, or regulation' includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." § 448.101(4), Fla. Stat. (2005).

To establish a prima facie case under the FWA, a plaintiff must show that: (1) he objected to or refused to participate in any illegal activity, policy or practice of the employer; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal. *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013). In *Aery*, we interpreted the first element of an FWA claim to mean that a plaintiff objecting to the employer's conduct need only have "a good faith, objectively reasonable belief" that the employer's activity was illegal. *Id.* (quoting *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008)).

The defendants first argue the plaintiff failed to prove which of the three defendants was his employer or that the acts complained of were those of any defendant. We reject this argument. As noted above, the defendants stipulated pre-trial that the plaintiff was employed by defendant LE Publications.[1] Moreover, at trial, the defendants were collectively referred to by the parties, witnesses and trial court as "Life Extension" or "LEF." Defense counsel (who represented all three defendants) voiced no objection when plaintiff's counsel stated during opening remarks that he would "refer to all three Defendants here as 'Life Extension.'" Trial evidence showed that the three defendants were located in the same building and shared a telephone number and website. As for the defendants' claim that the "true" employer was Scientific Information, Inc., the evidence showed that "Scientific Information" was simply the department in which the plaintiff worked.

The defendants also argue the plaintiff failed to prove that an act of his employer was an actual violation of a law, rule or regulation. *See Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015) (stating the FWA requires a plaintiff to prove "that he objected to an *actual* violation of law or that he refused to participate in activity that would have been an *actual* violation of law") (emphasis added)). In so arguing, the defendants request that we recede from our holding in *Aery* that a plaintiff objecting to his employer's conduct need only have "a good faith, objectively

---

[1] "A pretrial stipulation is binding on the parties and the court." *Dania Beach Boat Club Condo. Ass'n, Inc. v. Forcier*, 290 So. 3d 99, 101 (Fla. 4th DCA 2020) (citation omitted).

reasonable belief" that the employer's activity was illegal. 118 So. 3d at 916. As support for their position, the defendants cite Judge Gross's specially concurring opinion in *Usher v. Nipro Diabetes Systems, Inc.*, 184 So. 3d 1260, 1262 (Fla. 4th DCA 2016), which suggests this court may one day "reconsider language in *Aery . . .* that may conflict with the thoughtful analysis in *Kearns . . . .*"

This is not that day, for we conclude the defendants' argument was not preserved below and is thus waived. Not only did the defendants fail to raise this issue before the jury rendered its verdict, they failed to request any special instruction or interrogatory on the verdict form.[2] Perhaps that was because their defense was that the plaintiff never submitted a note to the company reporting alleged FDA violations—a defense which the jury obviously rejected.

In any event, the trial court's instruction to the jury on "protected activity" followed the precise language of the statute, rather than the "reasonable belief" standard from *Aery*. No objection was raised by either party to this instruction, and it was not fleshed out, one way or the other, regarding the plaintiff's burden to establish either an actual violation or a reasonable belief of a violation. Thus, as in *Usher*, it is not necessary that we reach the *Aery* argument.

## Conclusion

Competent substantial evidence supports the jury's verdict in favor of the plaintiff on his Florida whistleblower claim. Thus, the trial court was correct in denying the defendants a directed verdict. Whether we should revisit *Aery's* "reasonable belief" standard is a question for another day.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\*　　　\*　　　\*

---

[2] The verdict form asked, "Did the Plaintiff engage in protected activity which was a motivating factor that made a difference in the Defendants' decision to discharge the Plaintiff from his employment with the Defendants?" The jury instructions defined "protected activity" as "Objecting to defendants' activity, policy, or practice that violated a law, rule, or regulation or refusing to participate in defendants' activity, policy or practice that violated a law, rule, or regulation or would have same, had plaintiff participated."

*Not final until disposition of timely filed motion for rehearing.*