# Supreme Court of Florida

_____

No. SC2024-1835
_____

**CLINT SHANNON GESSNER,**
Petitioner,

vs.

**SOUTHERN COMPANY, et al.,**
Respondents.

May 28, 2026

COURIEL, J.

Clint Shannon Gessner sued his employer, claiming he was fired because he objected to alleged workplace safety problems that he believed violated the law.  We must decide whether section 448.102(3), Florida Statutes, requires that Gessner prove he objected to or refused to participate in an "actual violation" of law, or alternatively, that he need only prove that he possessed a "good faith, objectively reasonable belief" that the actions to which he objected were illegal.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

We hold that, to prevail in a retaliation claim under section 448.103, Florida Statutes, alleging a violation of section 448.102(3), an employee must establish by a preponderance of the evidence that the employer's activity, policy, or practice is in violation of law—that is, it constitutes a violation of the law—not that the employer has already in fact violated the law, nor that the employee reasonably believed the employer violated the law.

**I**

**A**

Florida is an employment-at-will state. This means that "where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract." *DeMarco v. Publix Super Mkts., Inc.*, 360 So. 2d 134, 136 (Fla. 3d DCA 1978) (citations omitted), *aff'd*, 384 So. 2d 1253, 1254 (Fla. 1980) (adopting the district court's reasoning). Accordingly, the "common law tort for retaliatory discharge has never been recognized within this state." *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994) (citing *Scott v. Otis Elevator Co.*, 572 So. 2d 902, 903 (Fla. 1990)). In Florida, for an employee to

maintain a cause of action for wrongful discharge, the employee must rely on a contractual or statutory exception to his or her at-will employment.

One such statutory exception became law with the enactment of Florida's private sector Whistle-Blower's Act in 1991. *See* §§ 448.101-.105, Fla. Stat. It was an amendment to the public sector Whistle-Blower's Act of 1986 and has remained unchanged since. *See* ch. 91–285, §§ 4-8, Laws of Fla. We have said the statute "prohibits private sector employers from taking retaliatory personnel action against employees who 'blow the whistle' on employers who violate the law or against employees who refuse to participate in violations of the law and provides employees a civil cause of action for such retaliation." *Arrow Air*, 645 So. 2d at 423 (footnotes omitted).

Specifically, section 448.103 creates a cause of action for an employee who is the object of employer conduct prohibited by section 448.102. And section 448.102 prohibits three types of retaliation. Subsection (1) prohibits an employer from retaliating against an employee who discloses to the government the employer's illegal activity. Subsection (2) prohibits an employer

from retaliating against an employee who assists in a government investigation into the employer's alleged violation of law. And subsection (3) prohibits an employer from retaliating against an employee because the employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." This case involves the third prohibition.

**B**

In 2008, Gessner went to work as a welder mechanic at a Gulf Power Company plant in Pensacola. Ten years later, Gulf Power fired him. It did so after placing Gessner on a kind of probation following multiple formal reprimands. Gessner's use of racially disparaging language during a meeting proved to be the last straw. Gulf Power told Gessner that the episode was the precipitating event for his termination.

Gessner then sued Gulf Power and its parent, Southern Company, saying he was fired in retaliation for his objections to the companies' alleged practices of exposing employees to unsafe environments "that were in violation of state and/or federal laws or that he reasonably and objectively believed were in said violation."

- 4 -

After discovery, Gulf Power, joined by Southern Company, moved for final summary judgment. They argued, in part, that Gessner could not establish that he had objected to actual violations of laws, rules, or regulations. In response, Gessner contended that he need not have objected to actual violations of law "[a]s long as [he] proffered evidence that he objected to conduct that he believed violated the law." Specifically, Gessner claimed he objected to accidents suffered by other employees, requiring hydrogen line repairs while generator turbines were running,[1] improperly purging natural gas lines, allowing coal dust build-up and gunite leakage,[2] stopping furnace fans with wooden blocks, scheduling outage work during major demolition projects, and modifying tools, among "other safety objections."

Alternatively, Gessner argued that the activities to which he

---

1. The plant where Gessner worked generates power using natural gas combustion turbines. Natural gas pipelines provide additional natural gas to the plant. During Gessner's tenure, the plant also generated power with coal.

2. Gunite is "a building material consisting of a mixture of cement, sand, and water that is sprayed onto a mold." *Gunite*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1998) [hereinafter *Webster's Dictionary*].

objected violated the Occupational Safety and Health Act (OSHA) General Duty Clause, 29 U.S.C. § 654(a)(1).[3] But Gessner has since abandoned this argument, having failed to raise it in his briefings before this Court. *See* Fla. R. App. P. 9.120(f) ("[I]f the petitioner . . . intends to raise issues for review in the supreme court independent of those on which jurisdiction is based, the petitioner . . . must identify those issues in the statement of the issues included in their brief on jurisdiction.").[4]

The trial court found that, to be protected by section 448.102(3), an employee must show that he or she blew the whistle on an actual, not suspected, violation of law. Using this standard, the trial court found that Gessner presented insufficient evidence

---

3. "To prove a violation of the General Duty Clause, the Secretary [of Labor] must establish that: (1) a condition or activity in the workplace presented a hazard; (2) the employer or its industry recognized the hazard; (3) the hazard was causing or likely to cause death or serious physical harm; and (4) a feasible and effective means existed to eliminate or materially reduce the hazard." *UHS of Del., Inc. v. Sec'y of Lab.*, 140 F.4th 1329, 1338 (11th Cir. 2025).

4. Gessner also argued in his summary judgment motion that his conduct was protected under section 448.102(2) because he claimed to have contacted OSHA officials while they were allegedly investigating his plant. But Gessner did not advance this claim on appeal.

from which a jury could conclude that he objected to a practice that constituted such a violation.

The First District Court of Appeal affirmed. *See Gessner v. S. Co.*, 396 So. 3d 908, 914 (Fla. 1st DCA 2024). It held that to sue an employer pursuant to section 448.102(3), an employee "must establish that he or she objected to, or refused to participate in, an activity, policy, or practice of the employer that is an actual violation of a law, rule, or regulation." *Id.* at 913. In so holding, the First District aligned itself with the Second District Court of Appeal in *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458 (Fla. 2d DCA 2015), and certified conflict with the Fourth District Court of Appeal in *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904 (Fla. 4th DCA 2013).

In *Aery*, the Fourth District applied an analysis used by federal courts reviewing retaliation claims under Title VII of the Civil Rights Act. 118 So. 3d at 912-13 (citing *United States ex rel. Vargas v. Lackmann Food Serv., Inc.*, 510 F. Supp. 2d 957, 968 (M.D. Fla. 2007) (deciding that to establish a prima facie claim under the Whistle-Blower's Act, the requisite elements for Title VII retaliation claims apply)). In so doing, the Fourth District relied on the federal

- 7 -

standard for what a plaintiff must prove to establish a Title VII retaliation claim: the plaintiff's good faith, objectively reasonable belief that he or she is protected by the statute. *See id.* at 916.

In *Kearns*, the Second District examined the text of section 448.102(3), finding it lacked a "good faith, objectively reasonable" belief standard, and concluded that an employee "must prove that he objected to an actual violation of law or that he refused to participate in activity that would have been an actual violation of law." 157 So. 3d at 465.

While this case was pending, the Fifth District Court of Appeal aligned itself with the First and Second Districts, certifying conflict with the Fourth District. *See Drozd v. Amatus Health, LLC*, 406 So. 3d 384, 386 (Fla. 5th DCA 2025).

We granted jurisdiction to resolve the conflict.

**II**

**A**

We review statutory interpretation questions de novo. *See Ripple v. CBS Corp.*, 385 So. 3d 1021, 1027 (Fla. 2024).

We begin with the text. "[T]he words of a governing text are of paramount concern, and what they convey, in their context, is what

- 8 -

the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

A statute's "language should be given its plain and ordinary meaning." *Somers v. United States*, 355 So. 3d 887, 891 (Fla. 2022) (quoting *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017)). Its meaning "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Section 448.102 states:

An employer may not take any retaliatory personnel action against an employee because the employee has:

. . . .

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

§ 448.102(3), Fla. Stat.

This section creates an exception to Florida's employment-at-will rule. It prohibits the employer from penalizing an employee in

retaliation for his or her objection to or refusal to participate in the employer's illegal activity. We can determine the prohibition's elements from the text. *See, e.g., State v. Ecker*, 311 So. 2d 104, 106 (Fla. 1975) (determining the elements of Florida's loitering statute directly from its text); *Taylor v. Mem'l Health Sys., Inc.*, 770 So. 2d 752, 753-54 (Fla. 5th DCA 2000) (basing the elements of a Whistle-Blower's Act claim on the text of section 448.102(1)). That is, for a violation of section 448.102(3) to occur: (1) an employee must "object[] to, or refuse[] to participate in" an "activity, policy, or practice"; (2) the "activity, policy, or practice" must be "of the employer"; (3) the employer's "activity, policy, or practice" must be "in violation of a law, rule, or regulation"; and (4) the employer must retaliate against the employee "because" of the employee's objection or refusal to participate in the employer's illegal activity. Importantly, section 448.102(3) uses "is" to connect the employer's "activity, policy, or practice" to a "violation of a law, rule, or regulation."

Section 448.103(1)(a) adds that "[a]n employee who has been the object of a retaliatory personnel action in violation of this act may institute a civil action in a court of competent jurisdiction for

- 10 -

relief."  So, to bring a claim under section 448.103, alleging a violation of section 448.102(3), an employee must have objected to or refused to participate in an employer's activity or policy that is in violation of law.

We use "is" as the present tense third-person singular case of the verb "to be."  *See Is, Compact Oxford English Dictionary* (2d ed. 2007) [hereinafter *Oxford Dictionary*]; *Is, Webster's Dictionary*.  Here, there are two relevant ordinary uses of that verb.  First, "is" can mean "to have an objective existence: have reality or actuality."  *Be, Webster's Dictionary*; *see also Is, Oxford Dictionary* ("That which exists, that which is; the fact or quality of existence.").  That's how Vin Scully used the word on September 9, 1965, in Los Angeles, when he said "the mound at Dodger Stadium right now is the loneliest place in the world."  Vin Scully, *1965: Los Angeles Dodgers 1, Chicago Cubs 0, in The Baseball Reader* 273, 274 (Charles Einstein ed. 1980).  The word refers to, or describes the fact or quality of existence of, a thing.

But second, "is" can be definitional.  It can mean "to equal in meaning: have the same connotation as . . . [or] to have identity with."  *Be, Webster's Dictionary*.  So it is that John Keats used it:

"[b]eauty is truth, truth beauty—that is all / Ye know on earth, and all ye need to know."  John Keats, *Ode on a Grecian Urn, in John Keats and Percy Bysshe Shelley: Complete Poetical Works* 185, 186 (1932).  The verb equates two ideas that share the same meaning.[5]

While both uses of the verb are semantically available to a reader of this statute (that is, one could plausibly choose one or the other in trying to understand what the statute means), the whistleblowing context of section 448.102(3) provides its correct construction—the reading that gives correct legal effect to the statute.[6]  An ordinary speaker of English would reasonably understand that the "is" in section 448.102(3) is not an "is" of objective existence—the first kind we described above.  That is

---

5.  Of course, there are other uses of "is."  One might use it to signify something occupying a place (e.g., "the milk is on the table").  *See Be, Webster's Dictionary* (defining one use of "be" as "to have, maintain, or occupy a place, situation, or position").  Or one might use it to refer to an occurrence (e.g., "the concert is tonight").  *See id.* (defining another use of "be" as "to take place: occur").  These are generally cases of the "objective existence" use of the verb.

6.  *See* Lawrence B. Solum, *The Unity of Interpretation*, 90 B.U. L. Rev. 551, 568-72 (2010) (describing the process of interpretation as discovering the semantically available meanings of a statute and the process of construction as determining the statute's legal effect from those semantically available options).

because not every application of section 448.102(3) requires the objective existence of an illegal act. For example, an employee who "object[s] to" or "refuse[s] to participate" in an illegal act may do so before the act happens—that is, before the illegal act is in the objective state of existing. § 448.102(3), Fla. Stat. In this scenario, the correct meaning of the verb can be ascertained from one sequence of events to which the statute speaks: the one in which an employee is penalized for objecting to an employer's activity or policy that has not yet transpired. In that case—indeed, even when an employee is penalized for blowing the whistle on an activity that has already transpired, or a policy already in place—the words of the statute do not require an adjudication about whether the subject of the employee's grievance is in fact in violation of the law. Because the statute speaks to these circumstances as well as to circumstances in which conduct in violation of law has already occurred, we deduce that the meaning of the verb is the second one we have described—one of definition. *See Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (exhausting all textual and structural clues enables us to find the correct reading of a statute)).

To illustrate, we return to a hypothetical situation this Court posed in *Golf Channel v. Jenkins*, 752 So. 2d 561, 567 (Fla. 2000): "[C]onsider an employee who is terminated on the spot by his supervisor for refusing to dump hazardous waste in a waterway." *Id.* (alteration in original) (quoting *Jenkins v. Golf Channel*, 714 So. 2d 558, 563 (Fla. 5th DCA 1998)). The hypothetical employer has yet to be in the objective state of having dumped waste into the waterway. But the ordered act is still, definitionally, in violation of law, as it violates the Florida Litter Law. § 403.413(6)(c), Fla. Stat. ("Any person who dumps . . . hazardous waste . . . is guilty of a felony of the third degree . . . ."). The hypothetical employee is thus protected by the statute when he objects to the dumping instruction regardless of whether the employer fails to ultimately carry it through without the employee.

The word "is" in section 448.102(3) equates two concepts: the conduct or policy of an employer about which an employee may complain without fear of reprisal under the statute, and a matter that is in violation of law. This is the verb in its definitional usage, the second one we described above. An employee need only object to an activity or practice that is, in the definitional sense, in

- 14 -

violation of law in order to be protected under the statute.

To be sure, an employer need not have directed the plaintiff employee to himself participate in the illegal activity for the employee to be protected by section 448.102(3). The employee may object to the employer's illegal activity carried out by the employer or its other agents. *See, e.g., Taylor*, 770 So. 2d at 753, 754 (finding a hospital employee pled a prima facie whistleblower claim when she objected to a physician's illegal examinations of female patients). Indeed, "the plain and unambiguous terms of the Private Whistle Blower Act state that an employee has protection under the Act for objecting to unlawful acts of his employer," which can include the "illegal activity of either the [employer] or anyone acting within the legitimate scope of their employment or that the [employer] ratified the illegal conduct of its employees." *Sussan v. Nova Se. Univ.*, 723 So. 2d 933, 934 (Fla. 4th DCA 1999) (emphasis omitted). But construing the statute as it applies to the completed conduct of the employer (i.e., not involving the whistleblower's decision to cooperate or object) does not change our interpretation of its words. In that construction, the verb "is" continues to refer to conduct that is illegal as a matter of definition, and not as a matter

of present condition, as even in that sequence of events no adjudication or other finding of illegality is likely to have occurred. *See, e.g., Taylor*, 770 So. 2d at 754 (finding the physician's examinations to which the plaintiff objected "may be in violation of sections 458.331(1)(j) and 458.359, Florida Statutes (1995), which forbids sexual misconduct in the practice of medicine"); *cf. Schultz v. Tampa Elec. Co.*, 704 So. 2d 605, 606 (Fla. 2d DCA 1997) (finding a plaintiff failed to state a whistleblower cause of action because his disagreement with the employer's conservation efforts did not amount to an "activity, policy, or practice of [the employer] that violates a law, rule, or regulation").

We reason from all this that section 448.102(3) does not require an employee to prove that the employer is, at the moment the employee is discharged, in the act of violating the law, that the employer has already violated the law, or that any authority has found the employer to have done so. Consider, as relevant statutory context, section 448.102(1), which prohibits an employer from retaliating against an employee who:

> Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a

law, rule, or regulation. *However*, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(Emphasis added.)

The italicized caveat suggests that a violation cannot require an adjudication before it can be the basis of an employee's claim, for it would make no sense for the law to allow a reasonable opportunity to correct conduct that has already resulted in an adjudication. The words after "[h]owever" in section 448.102(1) would have little meaning if we read the statute otherwise. And "[i]t is a cardinal rule of statutory interpretation that courts should avoid readings that render part of a statute meaningless." *Golf Channel*, 752 So. 2d at 565 (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 456 (Fla. 1992)). Thus, it stands to reason that section 448.102(1) does not require the employer to have been adjudicated guilty before an employee may seek its protection.

We presume "violation" means the same thing in section 448.102(3) as it does in section 448.102(1). *See Lab'y Corp. of Am.*

*v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (rejecting the petitioner's proposed meaning of "reimburse" because it "r[an] up against the 'presumption of consistent usage' " (quoting Scalia & Garner, *supra*, at 170)).  So, we surmise a violation in section 448.102(3) must not require a completed or proven violation before the employee may bring a claim.  Indeed, section 448.102(3) does not include the word "actual."  In sum, because "we cannot go beyond the plain meaning and inject extra statutory requirements that the legislature did not enact," *Steak N Shake, Inc. v. Ramos*, 415 So. 3d 107, 112 (Fla. 2025), we decline to inject a requirement that an employee show an actual violation into section 448.102(3).

But for similar reasons, we also reject the view that we are to read into the statute the requirement that an employee plead his or her "good faith, objectively reasonable" belief in an employer's violation.  Section 448.102(3) does not mention the employee's subjective state of mind.  And "this Court . . . is not 'at liberty to add words . . . that were not placed there by the Legislature.' " *Statler v. State*, 349 So. 3d 873, 879 (Fla. 2022) (second omission in original) (quoting *McDade v. State*, 154 So. 3d 292, 297 (Fla. 2014)).

The Legislature included subjective language in other

whistleblowing schemes. Florida's public whistleblower statute protects employees who blow the whistle on "[a]ny violation or *suspected* violation" of law. § 112.3187(5)(a), Fla. Stat. (emphasis added). And Florida's minimum wage scheme requires employers to notify their employees that they may not penalize the employees for filing a "complaint about an employer's *alleged* noncompliance with lawful minimum wage requirements." § 448.109(3)(a)1., Fla. Stat. (emphasis added). We read related statutes together. *See 1944 Beach Boulevard, LLC v. Live Oak Banking Co.*, 346 So. 3d 587, 593 (Fla. 2022) ("[S]tatutes relating to the same subject or object [are] construed together to harmonize the statutes . . . ." (quoting *Fla. Dep't of State v. Martin*, 916 So. 2d 763, 768 (Fla. 2005))). The Legislature could have included similar words in section 448.102(3).[7] It did not.[8]

---

7. Section 448.102(2) uses "alleged" when it prohibits retaliation against an employee who assists in a government investigation into an "alleged violation of a law, rule, or regulation by the employer." A violation here is, by nature, "alleged" because during an investigation, there has yet to be a determination of guilt. This further informs us that the Legislature is intentional when it uses "alleged."

8. Section 448.102(3) does not prohibit adverse employment action against an employee who refuses to participate in lawful

Moreover, because section 448.103 creates a civil cause of action, it makes sense to read section 448.102(3) in light of the typical civil pleading standards. *See S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*, 139 So. 3d 869, 872 (Fla. 2014) (analyzing section 373.129(5), Florida Statutes, which created civil penalties, in light of traditional civil pleading standards). To survive a motion to dismiss, a plaintiff must plead the "ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b)(2). And "[w]hether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact." *Suzmar, LLC v. First Nat'l Bank of S. Miami*, 388 So. 3d 852, 855 (Fla. 3d DCA 2023) (quoting *Alvarez v. E & A Produce Corp.*, 708 So. 2d 997, 999-1000 (Fla. 3d DCA 1998)). In assessing a motion to dismiss, a Florida court must accept the complaint's well-pled allegations as true. *See Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 87 (Fla. 2005).

---

activity. Returning to our hypothetical employee in *Golf Channel*, 752 So. 2d at 567, if, in the course of litigation, it were to be determined that the hypothetical barrels emptied into a waterway contained not waste but only water, assuming no other prohibition on pouring it out, that employer's activity could not be the basis for a penalized employee's recovery. This would be true even if the employee had a subjective belief that the barrels contained waste.

Here, to survive a motion to dismiss for a section 448.102(3) claim, an employee must plead ultimate facts about the employer's "activity, policy, or practice" that, if proven, would be in violation of law. A plaintiff must establish each textual element in section 448.102(3) discussed above by a preponderance of the evidence, including the fact that the activity, policy, or practice to which he or she objected is, by definition, in violation of a law. *See RLI Live Oak*, 139 So. 3d at 872 ("Traditionally, a preponderance of the evidence standard is the applicable burden of proof in civil cases.").

**B**

Gessner's claim did not survive a motion for final summary judgment, which "operates as any other final judgment." *Gulfstream Park Racing Ass'n v. MI-V1, Inc.*, 286 So. 3d 315, 318 (Fla. 4th DCA 2019). To survive such a motion, after the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the nonmovant must identify sufficient evidence supporting the existence of a genuine triable issue of material fact. Fla. R. Civ. P. 1.510(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968))).[9]  The trial court found that Gessner presented insufficient evidence from which a jury could conclude that he objected to actual violations of law.  We disapprove of the trial court's and the First District's construction of "actual violation" to the extent it requires a completed unlawful action or adjudication of illegality in order for a plaintiff to sustain his or her burden at this stage of the proceedings.  Nonetheless, the trial court correctly held that Gessner was not entitled to relief.[10]  At that stage,

---

9.  Florida adheres to the federal summary judgment standard.  *See In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 309 So. 3d 192, 193 (Fla. 2020) ("[W]e align Florida's summary judgment standard with that of the federal courts . . . .").

10.  Under this Court's "tipsy coachman" doctrine, an appellate court may "affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.' " *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) (quoting *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644-45 (Fla. 1999)).  The doctrine's name comes from Oliver Goldsmith's poem *Retaliation*:

> The pupil of impulse, it forc'd him along,
> His conduct still right, with his argument wrong;
> Still aiming at honour, yet fearing to roam,
> The coachman was tipsy, the chariot drove home.

*Carraway v. Armour & Co.*, 156 So. 2d 494, 497 (Fla. 1963).

Gessner was required to show a genuine triable issue of material fact as to whether any "activity, policy, or practice" to which he objected was, by definition, a "violation of a law, rule, or regulation." § 448.102(3), Fla. Stat. He did not. Gessner only presented evidence that he raised several safety concerns with supervisors at Gulf Power. He argued that he believed those safety concerns were violations of the law and that his belief should be sufficient to survive a motion for summary judgment. But the statute requires more. It requires that he prove, by a preponderance of the evidence, that the activities to which he objected are, definitionally, in violation of law.

Gessner alternatively asserted that the safety issues that he raised violated OSHA's General Duty Clause, but he did so only through conclusory statements, not specifying how his safety concerns met the elements of a General Duty Clause claim. And "support of summary judgment may not be based on . . . conclusions of law." *Fla. Dep't of Fin. Servs. v. Associated Indus. Ins. Co.*, 868 So. 2d 600, 602 (Fla. 1st DCA 2004). In any event, Gessner did not argue that, here. He raised a single issue: whether section 448.102(3) requires he demonstrate his objective,

reasonable belief that Gulf Power was violating the law or demonstrate that Gulf Power was in actual violation of law. And today we answer that section 448.102(3) requires that a plaintiff prove more than his or her subjective belief in an employer's violation of law. To prevail in a retaliation claim under section 448.103 alleging a violation of section 448.102(3), an employee must establish that the employer's activity, policy, or practice to which the employee objected is, by definition, in violation of law.

### III

Because Gessner has no remedy under sections 448.103 and 448.102(3), we approve the First District's decision below to the extent that it is consistent with this opinion. We similarly approve *Kearns* and *Drozd* to the extent that each is consistent with this opinion. We disapprove *Aery*.

It is so ordered.

GROSSHANS, FRANCIS, and SASSO, JJ., concur.
MUÑIZ, C.J., concurs in result with an opinion.
LABARGA, J., concurs in result.
TANENBAUM, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, C.J., concurring in result.

I agree with the majority's approval of the judgment below and with its rejection of the "reasonable belief" standard announced in *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904 (Fla. 4th DCA 2013). Whatever its merits as a matter of policy, the "reasonable belief" standard cannot be reconciled with the text of section 448.102(3).

I do not join the majority's opinion, however, because its analysis overly depends on preemptively addressing hypothetical facts involving an employee's objection to conduct that has not yet occurred. It is undisputed that this case involves only completed conduct. Situations involving conduct that has not yet occurred (but would be illegal if it did) could raise difficult questions about when or whether such conduct qualifies as an "activity, policy, or practice of the employer," as required by the text of section 448.102(3). Applying section 448.102(3) to nonexistent conduct could also create dissonance with section 448.102(1), which refers to "an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation," and then speaks to the employer having a "reasonable opportunity to correct the activity, policy, or

practice." It is not obvious that something that does not already exist can be "corrected."

I would stick to applying the statute to the facts of this case and save hypothetical applications for another day. To decide this case, it is enough to say that Gessner loses because he objected only to employer conduct that is *not* "in violation of a law, rule, or regulation."

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

First District - Case No. 1D2023-2297

(Escambia County)

Ashley N. Richardson of Marie A. Mattox, T.A., Tallahassee, Florida,

for Petitioner

Alan Lawson, Jason Gonzalez, Jessica Slatten, and Mathew D. Gutierrez of Lawson Huck Gonzalez, PLLC, Tallahassee, Florida; and Christin M. Russell of Florida Power & Light Law Department, Juno Beach, Florida,

for Respondent Gulf Power Company

Russell F. Van Sickle of Phelps Dunbar LLP, Pensacola, Florida,

for Respondent Southern Company

Richard E. Johnson of the Law Office of Richard E. Johnson, Tallahassee, Florida,

for Amicus Curiae National Employment Lawyers Association, Florida Chapter

Eric J. Holshouser and Cristine M. Russell of Rogers Towers, P.A., Jacksonville, Florida,

for Amicus Curiae Academy of Florida Management Attorneys, Inc.